UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEVIN D'WAYNE LACY,            §
                              §
        Plaintiff,            §
                              §
v.                            §    CIVIL ACTION NO. 3:11-CV-0300-B
                              §
DALLAS COWBOYS FOOTBALL       §
CLUB, et al.,                 §
                              §
        Defendants.           §

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Judgment on the Pleadings and in the

Alternative, Motion for Summary Judgment (doc. 34), filed December 15, 2011. For the following

reasons, the Court finds Defendants' Motion should be and hereby is **GRANTED**.

I.

BACKGROUND

This matter presently before the Court arises out of a suit filed *pro se* by Plaintiff Kevin

D'Wayne Lacy ("Lacy") concerning alleged discrimination and retaliation that occurred while Lacy

was employed by Defendant Dallas Cowboys Merchandising, Ltd. ("DCM"). Defendant Dallas

Cowboys Football Club ("DCFC") (together with DCM, "Defendants") is also named as a party.

Lacy, an African-American male who worked in DCM's compliance department, bases his

claims on a number of events occurring between April and August of 2010. Defs.' App. 74. On April

30, 2010, Lacy drove a forklift close to an office area and alleges his co-worker, Doug Mefford

("Mefford"), yelled: "You lazy bastard you going to run into the wall and office area." Defs.' App. 30.

After this incident, DCM found Lacy was making errors in his work and issued Lacy a written warning on May 5, 2010. Pl.'s App. [1] 27. DCM also took away Lacy's forklift-operating duties and reassigned him to place labels on tags for clothing. *Id.* Lacy alleges that DCM failed to discipline female employees who made similar mistakes. *Id.*

After his reassignment, Lacy alleges he overheard his co-worker, "J.T.," use the word "nigga" throughout a conversation on June 11, 2010. That same day, Lacy alleges his co-worker, Gabe Morales ("Morales"), inquired about Lacy's sexual orientation. Pl.'s App. 25. After Lacy reported Morales to DCM's Compliance Production Manager, Susan Pardue ("Pardue"), Lacy alleges Morales called him a "punk ass nigga." *Id.* On June 14, 2010, Lacy complained about Morales' use of the slur to Jessica Duran ("Duran"), who worked in DCM's human-resources department. Defs.' App. 34–35. That same day, Duran investigated Lacy's allegations and warned Morales that using slurs violated DCM policy. Subsequently, Lacy alleges that he wrote a letter, dated June 11, 2010, to the Equal Employment Opportunity Commission ("EEOC") styled as a "formal complaint," which details the incidents involving Lacy's discipline for work errors as well as J.T.'s and Morales' use of slurs.[2] Pl.'s App. 27–30.

Lacy claims that the discriminatory acts persisted after his first letter to the EEOC. On July 1, 2010, Lacy was assembling boxes when a fellow employee, "Randall," told Lacy, "That nigga took

---

[1] The Court refers to Lacy's "Reference Letters for Response Report" which was attached to Lacy's "Plaintiff's Response to Defendant's Summary Judgment" as "Plaintiff's Appendix."

[2] The Court notes that Lacy's letters, self-styled as "formal complaints," differ from the "charge of discrimination" Lacy filed with the EEOC on September 11, 2010. However, these "formal complaints" suffice as a charge because they identify in writing the relevant incidents and parties involved. *See* 29 C.F.R. § 1601.12 (2012) ("[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.").

your tape gun." Defs.' App. 41. On July 7, 2010, after a co-worker asked if Lacy was leaving work for the day, Randall remarked, "That nigga never stays, and he always leaves at 4 p.m." *Id.* Later that day, Lacy complained to Duran about Randall's use of racial slurs. *Id.* at 106–11. Duran met with Randall and issued him a verbal warning for violating DCM's anti-harassment policy. *Id.*

Lacy's disciplinary problems began to escalate shortly after the incidents with Randall. On July 14, 2010, Lacy's co-worker Sam Davis ("Davis") complained to Duran that Lacy inappropriately touched him. *Id.* at 119–22. Davis also alleged that Lacy asked him for personal information so he could serve as a witness in a lawsuit or complaint against DCM. *Id.* Duran met with Lacy on July 16, 2010, to discuss Davis' complaint. *Id.* Lacy denied touching Davis but admitted to asking Davis for his phone number, claiming it was to invite Davis to a church event. *Id.* Duran reminded Lacy of DCM's harassment policy and solicitation policy, which prohibited Lacy's invitations to religious events. *Id.* Subsequently, Lacy alleges he sent a second "formal complaint" letter to the EEOC on July 25, 2010, complaining about being informed of Davis' accusations. *Id.* at 31–32. On August 6, 2010, Lacy's co-worker Brandi Kennard ("Kennard") filed a complaint against Lacy alleging that Lacy approached her and repeatedly said, "I know you fantasize about me." Defs.' App. 78. Kennard also alleged that Lacy told her that she needed to lose weight and solicited her to attend church events with him. *Id.* at 78, 81.

As complaints against Lacy began to mount, he alleges that the discriminatory acts continued. On August 5, 2010, Lacy alleges saw the word "NEGROS" written on a box in DCM's warehouse. Pl.'s App. 33. Lacy further alleges that on August 16, 2010, manager Felipe Lopez ("Lopez") looked at Lacy's genitals while Lacy was urinating. Pl.'s App. 33. That same day, Lacy alleges that Andre' Landry asked him if he had used a supervisor's computer without permission. Pl.'s

App. 41.

DCM terminated Lacy's employment on August 19, 2010. Pl.'s App. 34. Defendants argue DCM terminated Lacy for violations of DCM's policies prohibiting solicitation and harassment. *Id.* In particular, Defendants claim that Lacy's termination resulted from Kennard's complaint alleging harassment. *Id.* at 4–5. When informed of his termination, Lacy denied making inappropriate comments to Kennard but admitted to having invited her to church events. Defs.' App. 81. Subsequently, Lacy filed a charge of discrimination with the EEOC, signed September 11, 2010, alleging DCM had engaged in race discrimination and retaliation.

Based on the foregoing events and allegations, Lacy filed the present suit containing the following claims against Defendants: (1) sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Texas Commission on Human Rights Act ("TCHRA") under both disparate-treatment and sexual-harassment theories; (2) religious discrimination under Title VII and TCHRA; (3) racial discrimination under Title VII and TCHRA under both hostile-work-environment and wrongful-termination theories; (4) retaliation under Title VII and TCHRA; (5) violations of the Fair Labor Standards Act ("FLSA") for requiring Lacy to work without compensation during a bona-fide meal period; (6) violation of Lacy's First Amendment rights under 42 U.S.C. § 1983; and (7) defamation.[3]

---

[3] Because Lacy is a *pro se* plaintiff, the Court construes his pleadings liberally. *See McClain v. Terry*, No. 3:07-CV-2010-B, 2008 WL 2810163, at *2 (N.D. Tex. July 18, 2008) ("The court liberally construes Plaintiff's complaint with all possible deference due to a *pro se* litigant.") (Boyle, J.) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Therefore, unless the complaint appears frivolous on its face, it is "incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same." *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

In addition to their arguments against specific claims, which are detailed in the respective sections of the analysis below, Defendants argue that Lacy's claims against DCFC must be dismissed because DCM, not DCFC, is Lacy's employer.[4] Defs.' Mot. 10. Furthermore, Defendants object on hearsay grounds to Lacy's audio evidence and letters proffered as evidence, specifically Exhibits "4ABC," Pl.'s App. 25–26, "4ABCS," *Id.* at 27–32, "45KABC," *Id.* at 42–43, and "4ABLS," *Id.* at 44–45. Defs.' Reply 3.

## II.

## LEGAL STANDARDS[5]

Summary judgment is appropriate when the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the nonmovant bears the burden of proof at trial, the movant need not support its motion with evidence negating the nonmovant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. *Id*; *Little,* 37 F.3d at 1075.

Once the movant has met its burden, the nonmovant must show that summary judgment is

---

[4] Because the Court has granted summary with respect to each of Lacy's claims on their individual merits, the Court does not reach the question of whether summary judgment is appropriate in general with respect to the claims against DCFC on the grounds that DCFC is not Lacy's employer.

[5] The Defendants' move for dismissal under Rule 12 (c) (judgment on the pleadings) and Rule 56 (summary judgment), the Court confines its analysis to Rule 56 summary judgment standards.

not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the nonmoving party must go beyond the mere pleadings and "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting FED R. CIV. P. 56(e)); *see Celotex*, 477 U.S. at 324. The evidence presented by the nonmovant must "support each essential element of its claims on which it will bear the burden of proof at trial." *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the nonmovant. *Id.*

## III.

## ANALYSIS

The Court begins its analysis by considering Defendants' objections to Lacy's evidence. The Court will then analyze Defendants' motion for summary judgment with respect to each of the claims in Lacy's pleadings.

A.      *Objections to Plaintiff's Evidence*

Defendants object to Lacy's audio evidence and several letters Lacy has proffered, arguing they are inadmissible hearsay. Defs.' Reply 3. Defendants only make a bare assertion that this evidence is hearsay. "FED. R. EVID. 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken." *Brockie v. Ameripath, Inc.*, No. 3:06–CV–0185–G, 2007 WL 1187984, at *6 (N.D. Tex. Apr. 23, 2007) (Fish, J.) (citing *United States v. Avants*, 367

F.3d 433, 445 (5th Cir. 2004)), *aff'd*, 273 F. App'x. 375 (5th Cir. 2008). Because Defendants assert that the evidence is inadmissible hearsay without specifically articulating the grounds for their objections, Defendants' objections are hereby **DENIED**.

B.     *Plaintiff's Sex Discrimination Claims*

Discrimination claims under Title VII and TCHRA are analyzed under the same standard. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (citing *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 991–92 (5th Cir. 2005)). Therefore, the Court's analysis of Lacy's Title VII and TCHRA claims refers only to Title VII.

i.     Exhaustion of Administrative Remedies

Defendants first argue Lacy's sex-discrimination claims are barred because he failed to exhaust his administrative remedies with the EEOC. Defs.' Mot. 13. Lacy must exhaust his administrative remedies before suing under Title VII. *Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 598 (5th Cir. 2006). A Title VII suit is limited to "the scope of the EEOC investigation which could reasonably grow out of" a charge filed with the EEOC. *Fine v. GAF Chem. Corp.*, 995 F.3d 576, 578 (5th Cir. 1993). Thus, a Title VII suit is not confined to the allegations in an EEOC charge and can include "any kind of discrimination like or related to the charge's allegations." *Id.* However, an assertion of sex-based disparate treatment does not exhaust a party's administrative remedies for sexual harassment; these two forms of discrimination are treated as "distinct." *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 n.4 (5th Cir. 1994).

Lacy's complaint alleges both sex-based disparate treatment and sexual harassment. Lacy's letter to the EEOC, dated June 11, 2010, alleges DCM disciplined Lacy for making errors while female employees who made similar errors incurred no discipline. Pl.'s App. 27–28. Lacy's complaint

echoes these allegations. Compl. ¶ 7. Thus, there remains a genuine issue of material fact as to whether Lacy exhausted his administrative remedies regarding sex-based disparate treatment, preventing summary judgment on this ground for Lacy's disparate treatment claim.

By contrast, Lacy's letter and charge provide no indication that Lacy experienced sexual harassment. Because sex-based disparate treatment and sexual harassment are "distinct," Lacy cannot piggyback his sexual-harassment claim on his disparate-treatment charge. *Clark*, 18 F.3d at 1280 n.4. Therefore, Lacy failed to exhaust his administrative remedies regarding his sexual-harassment claim. Accordingly, Defendants are entitled to summary judgment on Lacy's sexual-harassment claim, and Defendants' motion is hereby **GRANTED** in this regard.

ii.     Sex-Based Disparate Treatment

"[D]iscrimination claims based on circumstantial evidence are reviewed under the burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Bryan v. McKinsey Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). A Title VII plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the disparate treatment. *Id.* If the employer meets this burden, the burden shifts back to the plaintiff, who must establish that the proffered nondiscriminatory reason was merely pretext for the employer's discriminatory treatment. *Id.* at 804.

To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must show that he "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) . . . in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245

F.3d 507, 512–13 (5th Cir. 2001) (internal quotation marks omitted). Defendants concede that Lacy was qualified for his position, but argue that Lacy has no evidence that he satisfies elements (1)[6], (3)[7], and (4). Defs.' Mot. 14.

The fourth element requires the plaintiff to show that the "employer gave preferential treatment to [ ] [another] employee under 'nearly identical' circumstances." *Okoye*, 245 F.3d at 514 (brackets in original) (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). This burden is satisfied by comparing the plaintiff's conduct and resulting discipline to the conduct and resulting discipline of specific employees who are not members of the plaintiff's protected class. *See, e.g.*, *Okoye*, 245 F.3d at 514 (comparing conduct of plaintiff, a black female, to conduct by white male, white female, and Asian male). In the present case, Lacy has only alleged female employees "who perform similar duties [and] make the same mistakes" were not disciplined. Pl.'s App. 27. He has failed to proffer a specific employee whose errors can be classified as "nearly identical" to his own. Therefore, Lacy has not met his burden of showing Defendants treated similarly situated employees

---

[6] To be a member of a protected class, a plaintiff need not be a member of a minority group. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000) (holding white male could bring Title VII claim for reverse race discrimination as member of a protected class). Thus, because Lacy is male and Title VII protects against sex discrimination, this first element is satisfied.

[7] An adverse employment action is defined narrowly to include only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "[W]here the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). Although Lacy was later terminated, the adverse employment action he complains of consists of a written warning and transfer from a position which required operation of a forklift to placing stickers on clothing tags. Pl.'s App. 27. Because there is evidence that Lacy did not suffer a mere loss in prestige but was also relieved of his forklift-operating duties, a fact issue exists on the question of an adverse employment action. *See Pegram*, 361 F.3d at 283.

more favorably and has not made a *prima facie* showing of disparate treatment.[8] Defendants' motion for summary judgment is **GRANTED** with respect to Lacy's disparate-treatment sex-discrimination claim.

C.     *Plaintiff's Religious Discrimination Claim*

Defendants argue Lacy's Title VII religious discrimination claim is barred because he failed to exhaust his administrative remedies with the EEOC. Defs.' Mot. 13. As noted in Section III.B.1, *supra*, a plaintiff must exhaust his administrative remedies before suing under Title VII. *Price*, 459 F.3d at 598. When the factual allegations in a plaintiff's EEOC charge allege discrimination based on a plaintiff's membership in one protected class, that charge does not exhaust the plaintiff's administrative remedies for discrimination claims based upon the plaintiff's membership in a second protected class. *See Kretchmer v. Eveden, Inc.*, 374 F. App'x. 493, 495 (5th Cir. 2010) (holding plaintiff who alleged religious and age discrimination but not sex discrimination in EEOC charge did not exhaust administrative remedies regarding sex discrimination claim).

Lacy's EEOC charge and his letters to the EEOC allege discrimination based only on race and sex. These documents never mention religion, let alone allege religious discrimination. Thus, Lacy has failed to exhaust his administrative remedies regarding his religious discrimination claim. Defendants' motion in respect to Lacy religious discrimination claim is **GRANTED**.

D.     *Plaintiff's Race Discrimination Claims*

---

[8] Alternatively, a plaintiff could establish his *prima facie* case of sex discrimination by showing that he did not violate the rule which led to his discipline. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (holding *prima facie* case can alternatively be established by showing no work-rule violation occurred). Because Lacy admits to the poor work performance for which he was disciplined in May of 2010, he cannot establish his *prima facie* case in this manner.

Lacy makes race-discrimination claims under two theories: hostile work environment and wrongful discharge. The Court begins by analyzing Lacy's hostile-work-environment claim.

i.      Hostile Work Environment

To prevail on a claim for hostile work environment under Title VII, a plaintiff must prove he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Defendants argue the harassment alleged by Lacy did not affect a term, condition, or privilege of his employment. Defs.' Mot. 20.

"Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez*, 670 F.3d at 651 (quotation marks and citation omitted). When determining if a work environment is hostile, the Court must consider all surrounding circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation marks and citation omitted). A work environment must be "both objectively and subjectively offensive" to be actionable. *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "[M]ere utterance of an epithet . . . which engenders offensive feelings in an employee" does not "create an objectively hostile or abusive work environment." *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 596–97 (5th Cir. 1995) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). However, evidence of "routinely

-11-

[made] racist remarks" will create a fact issue on the question of objective hostility. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1049 (5th Cir. 1996).

The Fifth Circuit has repeatedly held that occasional use of racial slurs or derogatory language is not actionable. In *Hernandez*, an employee who had the subject of a racial slur and saw a poster derogatory toward Hispanics. 670 F.3d at 652. Because these two incidents were the only incidents that took place over a ten-year period, there was no fact issue that "harassment was 'sufficiently severe or pervasive' such that 'an abusive working environment' had been shown." *Id.* (quoting *Ramsey*, 286 F.3d at 268); *see also De Angelis*, 51 F.3d at 595 (holding ten derogatory statements in police newsletter appearing over two-and-a-half-year period not sufficiently severe to support jury verdict for hostile work environment); *Mosley v. Marion Cnty., Miss.*, 111 Fed. App'x. 726, 728 (5th Cir. 2004) (holding three incidents involving racial slurs insufficient to create fact issue for hostile work environment claim).

By contrast, in *Walker v. Thompson*, African-American plaintiffs proffered evidence of verbal harassment that began in 1994 and did not cease until the plaintiffs resigned in 1997. 214 F.3d 615, 626 (5th Cir. 2000). The harassment included "comparison to slaves and monkeys, derisive remarks regarding [plaintiffs'] African heritage, patently offensive remarks regarding the hair of African-Americans, and conversations in which a co-worker and supervisor used the word 'nigger.'" *Id.* The court held this evidence of ongoing racial harassment sufficient to create a fact issue on the question of hostility. *Id.*

The "limited number of infrequent racial slurs" alleged by Lacy—four uses of the word "nigga" and his discovery of the word "NEGROS" occuring over a three-month period—does not

-12-

give rise to a fact issue regarding the hostility of Lacy's work environment.[9] *Jackson v. Fed. Express Corp.*, No. 3:03-CV-2341-D, 2006 WL 680471, at *10 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (denying summary judgment because plaintiff's claim was based on more than a "limited number of infrequent racial slurs"). The five slurs alleged by Lacy fall in line with the three unactionble slurs in *Mosely* and the ten unactionable derogatory statements in *De Angelis*. There is no evidence Lacy continuously heard slurs throughout his employment, unlike the plaintiffs in *Walker*. Furthermore, Lacy has not proffered evidence that conduct directed towards him went beyond offensive utterances to include physical threats or humiliation. *See Hernandez*, 670 F.3d at 651. Finally, Lacy has presented no evidence that the slurs caused an unreasonable interference with his work performance; Lacy's poor performance began in May of 2010 and the alleged harassment did not occur until June of 2010. *See id.*; Pl.'s App. 27. Therefore, Lacy's has not proffered sufficient evidence to create a fact issue as to whether harassment affected a term, condition, or privilege of his employment. Accordingly, Defendants' motion for summary judgment is **GRANTED** with respect to Lacy's hostile work environment claim.

ii.   Plaintiff's Wrongful Discharge Claim

In a wrongful-discharge claim based on circumstantial evidence, the Court applies a *McDonnell Douglas* burden-shifting analysis. *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th

---

[9] Lacy also makes additional allegations of a hostile work environment without alleging that these incidents were based on his race, sex, religion or membership in any other protected class. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination based on race, color, religion, sex, or national origin). Specifically, Lacy alleges he was subjected to a hostile work environment when: (1) Mefford called him a "lazy bastard;" (2) Aggie Zamaniego cut in front of him while walking and stepped on his feet in DCM's break room, Defs.' App. 108; and (3) Landry asked if Lacy had used a supervisor's computer without permission. Because Lacy makes no assertion that these incidents were motivated by his membership in a protected class, they are not actionable. *See Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979) (holding Title VII claim is based on sexual orientation is barred because "discharge for homosexuality is not prohibited by Title VII").

Cir. 2012). When a plaintiff has allegedly violated a work-rule, a "plaintiff may establish a *prima facie* case by showing either [1] that he did not violate the rule[,] or [2] that, if he did, white employees who engaged in similar acts were not punished similarly." *Id.* at 892–93 (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)) (internal quotation marks omitted).

Lacy attempts to establish a *prima facie* case by show that he did not violate DCM's anti-harassment policy; however, Lacy has not submitted evidence beyond his denial of the harassment. District courts in the Fifth Circuit differ as to whether an employee's denial that he or she violated a work-rule is by itself sufficient to establish a *prima facie* case. *Compare Thornton v. Univ. of Miss. Med. Ctr.*, No. 3:09–CV–023–HTW–LRA, 2011 WL 4373942, at *6 (S.D. Miss. Sept. 19, 2011) (holding conclusory statements in plaintiff's affidavit that he did not violate employer's policies insufficient to create fact issue), *with Coleman v. Miller Enters., LLC*, No. 2:10–CV–296–KS–MTP, 2011 WL 4737580, at *2 (S.D. Miss. Oct. 6, 2011) (holding plaintiff's statement in affidavit that he did not run machine into fence sufficient to create fact issue). Given the conflicting district court decisions in the Fifth Circuit on this issue, the Court will assume, but refrain from holding, that Lacy has established a *prima facie* case.

Assuming that Lacy has established his *prima facie* case, the burden shifts to Defendants to proffer a legitimate, nondiscriminatory reason for terminating Lacy. *McDonnell Douglas*, 411 U.S. at 802. This burden "is one of production, not of persuasion . . . [and] can involve no credibility assessment." *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*, 530 U.S. 133, 142 (2000)). Even if the employer mistakenly believes that the plaintiff violated its policies, it has still articulated a legitimate nondiscriminatory reason for terminating the employee. *Turner v. Tex. Instruments, Inc.*, 555 F.2d 1251, 1256–57 (5th

Cir. 1977), *overruled on other grounds by Burdine v. Tex. Dep't of Cmty. Affairs*, 647 F.2d 513, 514 n.3 (5th Cir. 1981). In the present case, Defendants have met this burden by proffering Kennard's and Davis' complaints alleging Lacy harassed them, which provide the basis for a legitimate, nondiscriminatory reason for Lacy's termination.

The burden returns to Lacy to show that the reason Defendants proffered for his termination was pretext for discrimination. *McDonnell Douglass*, 411 U.S. at 804. "To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered . . . reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves*, 530 U.S. at 143). Lacy alleges that DCM failed to follow its three-step disciplinary process of first giving a verbal warning, then giving a written warning, and finally termination. Compl. ¶ 10; Defs.' App. 110. He argues he was given a verbal warning about harassment on July 15, 2010, but was never given the requisite written warning before his termination on August 19, 2010. Compl. ¶ 8.

Based on DCM's failure to give Lacy a written warning before terminating him, then, Lacy presumably asks the Court to infer that Defendants' reason for firing him was pretextual. "A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 346 (5th Cir. 2007) (citing *Upshaw v. Dallas Heart Group*, 961 F.Supp 997, 1002 (N.D. Tex. 1997)). Accordingly, an employer's failure to follow its stated policies, without further evidence, is insufficient to create a fact issue precluding summary judgment. Further, the Fifth Circuit has "consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."

*Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) (quoting *Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)). As noted above, Lacy has failed to adduce evidence that he was treated differently than other employees, or that would otherwise suggest that his termination was racially motivated. *See Lawson v. S. Components, Inc.*, 410 F. App'x 833, 836 (5th Cir. 2011). His evidence that DCM failed to give him a written warning in response to accusations of harassment, and his subjective belief that DCM discriminated against him, are not sufficient to create a fact issue. Thus, Lacy has not met his burden of showing pretext. Accordingly, Defendants' motion is **GRANTED** as it pertains to Lacy's wrongful-termination claim.

E.      *Plaintiff's Retaliation Claim*

Like discrimination claims, retaliation claims under Title VII and TCHRA are analyzed under the same standard. *Hernandez*, 670 F.3d at 650 (citing *Jones*, 427 F.3d at 991–92). Therefore, the Court's analysis of Lacy's Title VII and TCHRA claims will only refer to Title VII. The *McDonnell Douglas* burden-shifting analysis also applies to Title VII retaliation cases. *Byers*, 209 F.3d at 427. To establish a *prima facie* case, Lacy must show: "(1) that he engaged in activity protected by Title VII; (2) that he suffered an adverse employment action; (3) a causal connection exists between the protected activity and the adverse employment action." *Id.*

An employee has engaged in activity protected under Title VII if he has "[1] opposed any practice made an unlawful employment practice by [Title VII], or [2] because he has made a charge . . . under [Title VII]." 42 U.S.C. § 2000–2(a). Defendants concede that Lacy's complaints of racial harassment made on June 14, 2010, and July 7, 2010, to DCM's management are protected activity. Additionally, Lacy's letters, allegedly sent to the EEOC on June 11 and July 25, 2010, identify

discriminatory incidents and the parties involved, so they suffice as EEOC charges.[10] 29 C.F.R. § 1601.12 (2012). Therefore, these two letters are also protected activity which the Court must consider for the purposes of Lacy's retaliation claim.

To determine if there is a causal link between the adverse employment action and the plaintiff's protected activity, the Court looks to three factors: "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x. 437, 442 (5th Cir. 2007) (citing *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)).

Lacy's past disciplinary record does not weigh in his favor. Lacy admits that he experienced an unexpected number of errors in his work during May 2010. Compl. ¶ 7. Additionally, Davis lodged a harassment complaint against Lacy more than two weeks before the harassment allegations by Kennard which directly led to Lacy's termination. Defs.' App. 119–22. Furthermore, there is no evidence Lacy excelled at his job which would mitigate his negative disciplinary history. *See Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (holding plaintiff's disciplinary history "weigh[ed] neutrally" because praise of plaintiff's performance mitigated complaints about plaintiff's abrasive manner). Thus, Lacy's disciplinary history militates against a causal connection.

The evidence is mixed as to whether DCM followed its typical policies and procedures. Courts also consider whether the employer followed standard policy and procedure at the time of termination as well as when incidents occurred prior to termination. *See DeHart*, 214 F. App'x. at

---

[10] Lacy's EEOC charge, filed on September 11, 2010, came after his termination on August 19, 2010, so there can be no causal connection between that particular charge and his termination.

443 (using employer's follow up on plaintiff's complaints of discrimination, made seven months prior to termination, as evidence that employer followed policies); *see also Schroeder*, 664 F.3d at 1024 (noting that employer failed to follow policy in handling plaintiff's complaints of fraud six months prior to her termination).

When Lacy made complaints of harassment, DCM followed its policies by undertaking a prompt investigation and issuing warnings. Defs.' App. 8. After Lacy complained Morales harassed him, Duran investigated the allegations that same day and warned Morales that the use of racial slurs violated DCM's policy. *Id.* at 98–106. Similarly, after Lacy complained that Randall used racial slurs, Duran met with Randall and issued him a verbal warning. *Id.* at 106–11. The fact that DCM properly handled Lacy's complaints in accordance with its policies suggests that DCM took these complaints seriously, not that they caused his termination.

However, during Lacy's actual termination, DCM failed to follow its stated policy. In an email to Lacy, Duran wrote that DCM's "standard procedure is to provide a verbal warning, followed by a written warning, and then by termination."[11] Defs.' App. 110. Lacy received a verbal warning on July 15, 2010, after Davis' allegations of harassment. There is no dispute that DCM did not give Lacy a written warning regarding harassment prior to his termination for allegedly harassing Kennard. This failure to follow policy weighs in favor of causation.

In sum, the evidence does not show a pattern of DCM failing to follow its standard policies and procedures to Lacy's detriment. On one hand, DCM did fail to provide Lacy with the requisite

---

[11] The written "DCM EMPLOYEE POLICIES" provided by Defendants contradict the three-step policy enumerated by Duran: "All employees, including managers and supervisors, will be subject for disciplinary action, up to and including discharge from employment, for any act of harassment they commit." Defs.' App. 8. However, on summary judgment, considering the evidence in the light most favorable to Lacy, the Court must assume that DCM did in fact employ a three-step disciplinary policy.

written warning before terminating him. On the other hand, when Lacy made complaints of harassment, DCM handled Lacy's complaints in compliance with stated policies and procedures. Therefore, the record evidence as to whether DCM followed its policies and procedures "weighs neutrally on summary judgment." *Schroeder*, 664 F.3d at 1024.

Finally, the Court turns to the third factor: temporal proximity between Lacy's protected actions and his termination. "[C]lose timing between the protected activity and adverse employment action may provide evidence of a causal link." *Id.* at 1025. Lacy's protected activity took place between June 11 and July 25, 2010, and his termination occurred on August 19, 2010. Thus, twenty-five days lapsed between Lacy's final protected act and his termination. In the Fifth Circuit, a lapse of up to a month and a half has been held to support a finding of causation. *See id.* (holding "close" proximity between plaintiff's reports of fraud on June 19 and pay decrease on August 8 (forty-nine days) "supports a finding of causation"). However, even though the twenty-five days between Lacy's final protected act and his termination support a finding of causation, this time period is not necessarily strong support. For example, in *Schroeder*, the court found a fact issue on causation based not only on reports of fraud made forty-nine days before the plaintiff's pay decrease but also on an email sent only one week before the plaintiff's termination indicating the plaintiff's intent to file a whistleblower complaint. *Id.* Therefore, the twenty-five days between Lacy's termination and his last complaint provide only moderate support for the existence of a causal connection.

Considering the three factors above, this Court must decide whether a jury can infer that there was a causal connection between Lacy's protected acts and his termination. *Id.* The first factor, Lacy's significant disciplinary history, weighs strongly against such an inference. The second factor, whether DCM followed its policies and procedures, weighs neutrally. The third factor, temporal

proximity, provides moderate support for a causal connection. The Court finds that no reasonable jury could infer a causal connection between Lacy's protected activities and his termination, so Lacy has thus failed to establish a *prima facie* case of retaliation.

Assuming *arguendo* that Lacy has established a *prima facie* case of retaliation, his retaliation claim nonetheless fails to survive summary judgment. Upon a plaintiff's *prima facie* showing of retaliation, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for his termination. *Nowlin*, 33 F.3d at 507. In other words, Defendants must introduce "evidence which, if true, would permit the conclusion that the adverse employment decision was nondiscriminatory." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1995). The Fifth Circuit has held that a supervisor's documentation of policy violations suffices as a legitimate, nondiscriminatory reason. *See id.* at 308 (holding supervisor's letter noting employee's violation of procedures satisfies employer's burden). In the present case, Defendants argue that DCM terminated Lacy for "continuous violations of company policy." Defs.' Mot. 23. They proffer evidence of these violations in affidavits by Pardue and Bradle as well as the complaints filed by Kennard and Davis. Defs.' App. 74–78, 120. Thus, Defendants have met their burden of articulating a legitimate, nondiscriminatory reason for terminating Lacy.

Finally, because Defendants have established a legitimate, nondiscriminatory reason, the burden shifts back to Lacy to provide evidence that would allow a jury to infer that retaliation was Defendants' true motive. *McCoy*, 492 F.3d at 562. At this stage, the plaintiff must show that the "adverse employment action would not have occurred 'but for' the protected activity in order to prove unlawful retaliation." *Long*, 88 F.3d at 308 (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)). Viewing the evidence in the light most favorable to Lacy, the Court finds that

there is not sufficient evidence for a jury to conclude that Lacy would not have been terminated but for his protected activity. Lacy has presented no evidence that would allow a juror to conclude that DCM's management did not believe that he violated DCM's anti-harassment and non-solicitation policies. *See Barrera v. Worldwide Flight Servs., Inc.*, 220 F. App'x. 253, 254 (5th Cir. 2007) (holding that plaintiff's failure to provide evidence countering employer's belief that plaintiff had used racial slur and made threats to a fellow employee caused plaintiff's showing of pretext to fail). Accordingly, Lacy has not raised a fact issue as to whether DCM's legitimate, nondiscriminatory reasons for terminating him were merely pretext for retaliation.

In sum, because Lacy has shown neither a *prima facie* case of retaliation nor that DCM's proffered reason for terminating him was pretextual, Lacy has not met his burden on summary judgment for his retaliation claim. Therefore, Defendants' motion is **GRANTED** with respect to Lacy's retaliation claim.

G.    *Plaintiff's FLSA Claim*

Lacy alleges that DCM violated FLSA by prohibiting Lacy from soliciting co-employees to attend church events during his lunch period. Pl.'s Resp. 1–2. Lacy cites a posting on the Department of Labor's website summarizing 29 C.F.R. § 785.19. This regulation provides: "Bona fide meal periods are not work time. The employee must be completely relieved from duty for the purposes of eating regular meals." *Id.* To determine if an employer has violated section 785.19, the Fifth Circuit employs a "predominant-benefit test." *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 265 (5th Cir. 1998). Under this test, "[t]he critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee." *Id.* at 264–65. In *Bernard*, the court found that the employer had violated section 785.19 by requiring workers to wear tools and radios

during lunch and by often interrupting the workers' lunch with urgent maintenance requests. *Id.* at 265. By contrast, in the present case, Lacy's claim that DCM's non-solicitation policy carried over into lunchtime does not indicate that Lacy was required to perform any work-related duties for DCM's benefit during this period. Therefore, Lacy's claim does not satisfy the primary-benefit test, so Defendants' motion is **GRANTED** with respect to Lacy's FLSA claim.

H.     *Lacy's First Amendment Claim*

Lacy alleges that DCM's policy prohibiting his religious solicitations of other employees violated the First Amendment, which the court construes as a claim under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person, who under color of any . . . State" law deprives another person of his or her "rights . . . secured by the Constitution." 42 U.S.C. § 1983. "A person acts 'under color of state law' if he engages in the '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010) (quoting *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002)). Defendants are not governmental entities, and Lacy has produced no evidence that Defendants have otherwise acted under color of state law. Defs.' App. 1. Thus, Defendants' motion is **GRANTED** with respect to Lacy's section 1983 claim.

I.     *Defamation*

Under Texas law, a defamation claim requires the plaintiff to prove the defendant: "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with . . . negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). A statement is published if it is communicated to a "third person who is capable of understanding its defamatory meaning and in such a way that

the person did understand its defamatory meaning." *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no. pet.). Furthermore, a publication can either be "an actionable statement of fact or a constitutionally protected expression of opinion." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002). Whether a publication is a statement of fact or an expression of opinion "depends on a reasonable person's perception of the entirety of a publication." *Id.* A statement which implies that "a coworker is incompetent is not a statement of fact, but rather a nonactionable opinion." *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no. pet.).

Lacy alleges Defendants made five defamatory statements. Four statements do not meet the requirements for publication, as there is no evidence they were made to a third party. The first alleged defamatory statement occurred when Bradle, Pardue, and Duran informed Lacy of Davis' allegations of harassment. Compl. ¶ 11. The second incident involved Lopez's alleged harassment of Lacy. However, during this incident, Lacy never alleges a statement was made; Lacy only accuses Lopez of inappropriate staring. *Id.* The third statement was made when Lacy's co-worker, Andre' Landry, told him, "I heard from an unknown source that you were in Carlos [sic] Jasso office on his computer." *Id.* The fourth statement occurred when Bradle and Pardue accused Lacy of calling Kennard fat. *Id.* Lacy has not presented evidence that any agent of the Defendants made these statements to a third party. Therefore, there is no fact issue as to whether these statements were published, so the underlying defamation claims must fail as a matter of law.

The final alleged defamatory statement occurred when Lacy drove a forklift too close to an office area and Mefford yelled, "You lazy bastard you going to run into the wall and office area." *Id.* As statements about an employee's competency are expressions of opinion, not actionable assertions

of fact, *Robertson*, 190 S.W.3d at 903, the statement that Lacy was a "lazy bastard" is similarly an opinion that is not actionable as defamation. Therefore, Defendants' motion is **GRANTED** with respect to Lacy's defamation claims.

IV.

CONCLUSION

For the foregoing reasons, the Court finds that no genuine issue of material fact exists that would entitle Plaintiff to recovery for his claims. Accordingly, the Court finds that Defendants' Motion for Summary Judgment should be and hereby is **GRANTED**.

SO ORDERED.

SIGNED July 10, 2012

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE